IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VONAGE HOLDINGS, Corp., and VONAGE NETWORK, Inc., | ) ) ) | CASE NO. 4:07CV3277 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | MEMORANDUM |
| NEBRASKA PUBLIC SERVICE COMMISSION, ROD JOHNSON, in his official capacity as Commissioner of the Nebraska Public Service Commission, FRANK E. LANDIS, JR., in his official capacity as Commissioner of the Nebraska Public Service Commission, ANNE C. BOYLE, in her official capacity as Commissioner of the Nebraska Public Service Commission, TIM SCHRAM, in his official capacity as Commissioner of the Nebraska Public Service Commission, GERALD L. VAP, in his official capacity as Commissioner of the Nebraska Public Service Commission, and JEFFREY L. PURSLEY, in his official capacity as Director of the Nebraska Telecommunications Infrastructure and Public Safety Department of the Nebraska Public Service Commission, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | AND ORDER |
| Defendants. | ) | |

      This matter is before the Court on the Plaintiffs' Motion for Preliminary Injunction and Declaratory Relief (Filing No. 3), the Applicants' Motion to Intervene (Filing No. 31), and the Defendants' Motion to Dismiss, or in the Alternative, To Stay Action (Filing No. 86). Through this action, Plaintiffs Vonage Holdings, Corp., and Vonage Network, Inc. (collectively "Vonage"), seek to prevent the Defendants, the Nebraska Public Service

Commission,[1] its Commissioners,[2] and the director of the Telecommunications Infrastructure and Public Safety Department, Jeffrey Pursley (collectively the "NPSC"), from imposing upon Vonage an obligation to assess and collect a Nebraska universal service fee (hereafter "USF") from its customers. The Defendants oppose Vonage's motion.

The Applicant Interveners are small telephone companies that serve Nebraska areas where the service is subsidized by payments from the Nebraska USF.[3] The Applicants seek either mandatory or permissive intervention based on their financial interest in the outcome of the case. The Court invited the Applicant Interveners to provide an amicus brief on Vonage's motion, but the invitation was declined.

Oral argument was presented on February 14, 2008. Mark Grannis and Ed Warin appeared on behalf of Vonage, Jay Bartel appeared on behalf of the Defendants, and Paul Schudel appeared on behalf of the Applicant Interveners. For the reasons set forth below, Vonage's motion will be granted, preliminary injunctive and declaratory relief will issue, and the Applicants' motion to intervene will be denied.

## Factual Background

***Vonage's DigitalVoice Product***

Vonage provides an interconnected VoIP service (Voice over Internet Protocol) that it markets under the name DigitalVoice. Voice communication over the Internet is different

---

[1] On February 29, 2008, Vonage filed a Notice of Voluntary Dismissal Without Prejudice of Defendant Nebraska Public Service Commission; thus, it is no longer a Defendant in this action.

[2] Defendants Rod Johnson, Frank Landis, Anne Boyle, Tim Schram and Gerald Vap.

[3] The Applicant Intervenors are listed in their motion at Filing No. 31.

from traditional telephone communication offered by traditional telephone companies that use circuit-switched technology. Interconnected VoIP is defined in the Code of Federal Regulations as a service that:

> (1) Enables real-time, two-way voice communications;
>
> (2) Requires a broadband connection from the user's location;
>
> (3) Requires Internet protocol-compatible customer premises equipment (CPE); and
>
> (4) Permits users generally to receive calls that originate on the public switched telephone network (PSTN) and to terminate calls to the public switched telephone network.

47 C.F.R. § 9.3.  Interconnected VoIP service can send data via the Internet from computer to computer and from computer to a traditional telephone that has been specially adapted.

According to Vonage, VoIP service is like the service provided by traditional telephone companies in that it provides a real time voice service, but it is unlike traditional telephone service because VoIP addresses are not geographically restricted.  For example, a VoIP customer who lives in Texas may obtain a VoIP "phone number" with a 402 prefix even though that person does not live in Nebraska.  Because some VoIP service is geographically unrestricted, Vonage argues that it must be treated differently from traditional telephone companies in assessment of USFs.

***Federal and Nebraska Universal Service Fees***

Federal and state governments impose USFs on telephone users in an effort to defray the cost of providing telephone services to rural and remote areas.  In 1997, the Nebraska Telecommunication Universal Service Fund Act (hereafter the "NUSF Act") was

enacted, codified at Neb. Rev. Stat. §§ 86-316 to 86-329.  The stated purpose of the NUSF Act is to provide a "funding mechanism which supplements federal universal service support mechanisms and ensures that all Nebraskans, without regard to their location, have comparable accessibility to telecommunications services at affordable prices." Neb. Rev. Stat. § 86-317.  The NUSF directs the NPSC to "require every telecommunications company to contribute . . . " to the fund, and it defines telecommunications company to include "any natural person, firm, partnership, limited liability company, corporation, or association providing telecommunications or telecommunications service for hire in Nebraska . . . " See Neb. Rev. Stat. §§86-324(2)(d) and 86-322.  To achieve these ends, the NPSC has imposed a USF on retail end-user revenues from intrastate telecommunications services.  (Filing No. 60, Ex. 1, Pursley Aff. ¶ 4).  The fee is set by the NPSC, and as of the date of the briefing, it was set at 6.95 percent of retail end-user revenue from intrastate telecommunications services.

### *Contribution of USF by Interconnected VoIP providers*

On June 27, 2006, the FCC entered an order directing interconnected VoIP service providers to collect from their customers a federal USF pursuant to a safe harbor rule, if necessary (hereafter "FCC USF Contribution Order.")[4]   In its Order, the FCC did not decide whether an interconnected VoIP service should be classified as a telecommunications service or an information service.  Instead, the FCC relied on its permissive authority under §254(d) and its ancillary jurisdiction to require interconnected VoIP service providers to contribute to USF fund.  FCC USF Contribution Order at ¶35.

---

[4]  *In the Matter of Universal Service Contribution Methodology*, 2006 WL 1765838.

On April 17, 2007, the NPSC issued an order stating that interconnected VoIP service providers are required to collect a surcharge from customers for the Nebraska USF fund (hereafter the "NUSF Order").[5]  Vonage refused to collect the Nebraska USF from its customers, and, on November 6, 2007, Pursley filed a complaint with the NSPC to enforce the NUSF Order as to Vonage.  In response, Vonage filed this action and the motion for preliminary injunction on December 20, 2007.  (Filing No.1).

## PRELIMINARY INJUNCTION

### *Dataphase Factors*

The Court's analysis of any application for a preliminary injunction requires the weighing of four factors:

> Whether a preliminary injunction is appropriate depends on four considerations:  the probability that the movant will succeed on the merits; the threat of irreparable harm to the movant should the court deny the injunction; the balance between this harm and the harm that granting the injunction will cause to the other litigants; and the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

*Mid-America Real Estate Co. v. Iowa Realty Co., Inc.,* 406 F.3d 969, 972 (8th Cir. 2005). The burden of establishing the propriety of a preliminary injunction is on the movant. *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir 1994).  "No single [*Dataphase*] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op*, 28

---

[5] Filing No. 1, Attachment B, *In re Neb. Pub. Serv. Com'n, on its own Motion, Seeking to Establish Guidelines for the Administration of the Nebraska Universal Service Fund,* 2007 Neb. PUC Lex. 92; Filing No. 60, Pursley Aff. ¶ 8, Ex D.

F.3d at 1472 (quoting *Calvin Klein Cosmetic Corp., v. Lenox Lab, Inc.,* 815 F.2d 500, 503 (8th Cir. 1987), and also citing *Dataphase*.  The issuance of a preliminary injunction will be reversed only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise."  *City of Timber Lake v. Cheyenne River Sioux Tribe,* 10 F.3d 554, 556 (8th Cir. 1993) *cert. denied* 512 U.S. 1236 (1994).

### *Analysis of Arguments*

In this action, Vonage seeks a preliminary injunction and declaratory relief, acknowledging that it need not pay the NUSF.  First, Vonage argues that the FCC has held that state regulation of interconnected VoIP service has been preempted pursuant to an order of the FCC.  Second, Vonage argues that even if the FCC's preemption could be disputed in other circuits, in the Eighth Circuit there is binding precedent that the DigitalVoice product is an information service and, as such, it is not subject to telecommunications regulation by the NPSC.

### *Success on the Merits*

Vonage argues that, in this action, it is seeking enforcement of its rights as previously decided by the FCC, and as previously affirmed on appeal to the Eighth Circuit Court of Appeals, rather than an adjudication of its rights.  Vonage relies primarily upon the FCC's order to demonstrate that the state commission's regulation of interconnected VoIP service has been preempted by the FCC.  Even if the FCC had not preempted regulation of its service, Vonage argues that the Eighth Circuit Court of Appeals has affirmed the decision of the United States District Court for the District of Minnesota that preliminarily enjoined the Minnesota public utilities commission from regulating Vonage's DigitalVoice

product.[6] That federal district court distinguished Vonage's information service, that uses broadband internet connections to relay information, from a traditional telephone company service that uses circuits and switches to transmit the sound of a voice.

## 1. *Preemption.*

The FCC considered preemption in its order resolving a dispute between the Minnesota Public Utilities Commission ("MPUC") and Vonage, hereafter referred to as the "FCC Preemption Order."[7] The FCC found that it, and not state commissions, has the responsibility to decide whether certain regulations apply to DigitalVoice and related VoIP services. The first paragraph of the FCC Preemption Order states:

> In this [Order], we preempt an order of the Minnesota Public Utilities Commission . . . applying its traditional "telephone company" regulations to Vonage's DigitalVoice service, which provides voice over Internet protocol (VoIP) service and other communications capabilities. We conclude that DigitalVoice cannot be separated into interstate and intrastate communications for compliance with Minnesota's requirements without negating valid federal policies and rules. In so doing, we add to the regulatory certainty we began building with other orders adopted this year regarding VoIP . . . by making clear that this Commission, not the state commissions, has the responsibility and obligation to decide whether certain regulations apply to DigitalVoice and other IP-enabled services having the same capabilities. For such services, ***comparable regulations of other states must likewise yield*** to important federal objectives.

19 FCC Rcd at 22404-05, ¶ 1. Emphasis added.

---

[6] *Vonage Holdings Corp. v. Minn. Pub. Utils. Comm'n,* 290 F. Supp. 2d 993, 1001-02 (D. Minn. 2003), aff'd 394 F.3d 568, 568 (8th Cir. 2004).

[7] *Vonage Preemption Order*, 19 FCC Rcd at 22404 (Nov. 12 2004), *aff'd sub nom. Minn. Pub. Utils. Comm'n v. FCC*, 483 F.3d 570 (8th Cir. 2007).

The FCC Preemption Order stated that MPUC did not have the right to impose "certain traditional telephone company regulations" upon Vonage's VoIP service, but it arguably left open for future decision whether other state laws and regulations might fall outside the preemption order.  The FCC determined that Vonage's services were jurisdictionally "mixed," but concluded that the FCC preempted state regulation over internet services when, as with VoIP services, it was "impossible or impractical" to separate the services along intrastate and interstate lines.  FCC Preemption Order at 22,413.

The MPUC's power to impose contributions to a state USF was not expressly addressed in the FCC Preemption Order.  The FCC did state, however, that "Vonage's service is fully portable; customers may use the service anywhere in the world where they can find a broadband connection to the Internet," and, in this case, the NPSC has raised no genuine issue as to that fact.  Vonage concludes that the FCC's preemption of the area is clear and is necessary because there is no reliable way to distinguish between its interstate and intrastate service, and, consequently, there is no way fairly to assess a state USF upon it when the surcharge is calculated based on a percent of retail end-user revenue from *intrastate* calls.

The Defendants contend that Vonage is reading the FCC order too broadly, and that Vonage relies only on a footnote in the FCC opinion to support its position. The Defendants argue that the FCC Preemption Order left open the possibility that states may regulate VoIP service under certain conditions.  Specifically, the Defendants contend that the FCC Preemption Order left open the possibility of state regulation and control over VoIP providers, so long as the state is not restricting entry into the market or setting tariffs which were the types of regulations at issue in the MPUC case.  Further, the Defendants argue

8

that the FCC's subsequently issued USF Contribution Order provides the Defendants with a mechanism for assessing a state USF surcharge when the distinction between interstate and intrastate service cannot be made – specifically, the development of safe harbor rules.[8]  In the NUSF Order, the NPSC developed a safe harbor that is the invert of the FCC's safe harbor for interstate service that it applies to interconnected VoIP service providers. However, the safe-harbor ruling does not negate the fact that there is no way to distinguish between interstate and intrastate DigitalVoice service; nor does the adoption of safe-harbor rules affect the characterization of VoIP service as an information service.

The Defendants contend that Vonage cannot demonstrate a likelihood of success on the merits because 47 U.S.C. § 254 (f) gives the states authority to adopt regulations that are "not inconsistent with the [FCC's] rules to preserve and advance universal service." The Defendants' position is largely overcome by the Eighth Circuit Court's affirmance of the FCC Preemption Order, and the Eighth Circuit Court's observation that the basis for the FCC's preemption ruling was that, as least with interconnected VoIP service that is

---

[8] The Tenth Circuit Court of Appeals has said about the FCC USF Contribution Order and the reasons for the difference in treatment between VoIP and mobile service:

> [T]he FCC found that VoIP services are internet services, and that Congress specifically intended internet services to be treated differently than either mobile communications or traditional wireline services. The Telecommunications Act does not provide a mixed state-federal regulatory scheme for internet services, with the exception of provisions for blocking offensive material. 47 U.S.C. § 230. In contrast, the Act establishes a detailed regulatory scheme for commercial mobile services, with primary jurisdiction given to the FCC, but expressly permits states to regulate non-rate and non-entry aspects of mobile services and requires states designating ETCs in rural markets served by an incumbent provider to make a public interest determination. 47 U.S.C. § 332(c)(3)(A).

*WWC Holding Co., Inc. v. Sopkin*  488 F.3d 1262, 1274 (10th Cir. 2007).

nomadic (including DigitalVoice), it is impossible to distinguish between interstate and intrastate calls.  *See Minn. Pub. Utils. Comm'n v. FCC,* 483 F.3d 570 (8th Cir. 2007), affirming *In re Vonage Holdings Corp. Petition for Declaratory Ruling Concerning an Order of the Minn. Pub. Utils. Comm'n, 19 F.C.C. Rcd. 22,404 (Nov. 12, 2004)*. The Eighth Circuit Court stated, "[t]he impossibility exception, if applicable, is dispositive of the issue whether the FCC has authority to preempt state regulation of VoIP services." *Minn. Pub. Utils. Comm'n*, 483 F.3d at 578.  There is not a shred of evidence that takes this case outside the "impossibility exception."

### *2.     Other Eighth Circuit Precedent.*

Vonage also argues, separate and apart from the FCC's actions, that the Eighth Circuit Court of Appeals has had occasion to affirm the United States District Court for the District of Minnesota's finding that Vonage, through its DigitalVoice product, is engaged in an information service rather than a telecommunications service.  Before the FCC considered the dispute between the MPUC and Vonage, the dispute was in federal district court in Minnesota where Vonage had filed a motion for preliminary injunction to enjoin the MPUC from imposing certain regulations upon it.  The federal district court heard the matter and issued a preliminary injunction against the state actors finding, in part, that Vonage provided information services rather than telecommunications services, and that the strong Congressional intention to avoid regulating the Internet provided a basis for enjoining the MPUC from enforcing regulations upon Vonage and its DigitalVoice customers.  The MPUC appealed the issuance of the injunction to the Eighth Circuit, and, while that appeal was pending, the FCC issued its Preemption Order.

When the State's appeal of the preliminary injunction reached the Eighth Circuit Court, it had the benefit of the FCC's Preemption Order.  The Eighth Circuit affirmed the district court's issuance of the preliminary injunction based in part on the FCC's Order, but also on the district court's finding that Vonage provided information services rather than telecommunications services.

The Eighth Circuit Court characterized the FCC order as follows, "The FCC concluded that the interstate and interstate [sic] components of Vonage's service are inseverable, such that it is not possible for MPUC to regulate the intrastate component of the service without impermissibly regulating the interstate component. . . . Because we conclude that the FCC Order is binding on this Court and may not be challenged in this litigation, we now affirm the judgment of the district court on the basis of the FCC Order." *Vonage Holdings Corporation v. Minnesota Pub. Util. Com'n.,* 394 F.3d 568, 569 (8th Cir. 2004).

For all these reasons, the Court concludes that it is very likely that Vonage will succeed on the merits of its case.  Indeed, the Court is prepared to declare, based on the foregoing, that the NPSC's authority to regulate the nomadic interconnected VoIP service provided by the Plaintiffs is preempted by the FCC, and Vonage need not comply with the NUSF Order.

***Threat of Irreparable Harm, Balance of Harms, and Public Interest.***

In this matter, the other three Dataphase factors carry less importance.  Vonage contends that it is under a threat of irreparable harm in that if the NPSC is successful, it will deprive Vonage of its constitutional right protected under the dormant Commerce Clause. Vonage contends the NUSF directly discriminates against it because the fee has the

11

practical effect of regulating communications that occur wholly outside Nebraska's borders, and indirectly discriminatory because of the excessive burdens placed those who use the service outside Nebraska. The State counters only that any harm would be "minimal" – and the State stands to lose money to support telephone service to rural and sparsely populated areas. This factor weighs slightly in favor of issuance.

The third Dataphase factor is the balance of the harm posed by the allegedly offending conduct - in this case the assessment of the NUSF against Vonage customers - and any harm that granting the injunction might cause to other litigants. The Court does not view this factor as favoring either party.

Vonage argues that the public is served by honoring the Congressionally declared public policy supporting advanced information services and the Internet's freedom from regulation. This principle is also central to the FCC's Preemption Order. The Defendants argue that the public is best served by providing telecommunications services of comparable quality to all citizens, even those who live in remote areas, and that is accomplished only through the financial support of the universal service fee funds. Undeniably, there is a legitimate public interest to be served on both sides of this debate, but the Court concludes that this factor weighs in favor of issuance of the preliminary injunction based on Congress's expressed intention that the Internet be free from undue regulation.

Based on this analysis of the *Dataphase* factors, the Court concludes that Vonage is entitled to the issuance of a preliminary injunction and declaratory relief preventing the NPSC from regulating Vonage's interconnected VoIP service product known at DigitalVoice by requiring Vonage to bill, collect and remit a Nebraska USF from its customers.

***Abstention***

Given the outcome of the *Dataphase* analysis, particularly with regard to this Court's view of Vonage's likelihood of success on the merits, the Court rejects the Defendants' arguments relating to abstention.

The Defendants argue that this Court should abstain from the entry of an injunction and should either dismiss this case without prejudice or stay the litigation pending the resolution of the complaint against Vonage that was presented to the NPSC and is working its way through the state court system. The Defendants contend that because Vonage raised in the state action the defense that the NPSC has no jurisdiction over it as an information service provider, there is an open question of state law which, under either *Pullman* abstention[9] or *Younger* abstention[10], this Court should permit the Nebraska courts to answer.

Vonage's response to the abstention argument is that this Court should exercise its jurisdiction to decide the matter because 1) the FCC has already ruled that it, not state commissions, is responsible for the regulation of interconnected VoIP providers; and 2) the FCC's ruling and a federal trial court's issuance of a preliminary injunction were affirmed

---

[9] *Pullman* abstention is appropriate when a state action is challenged in federal court as unconstitutional if unsettled questions of state law may dispose of the case without reaching the constitutional issue. *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 499-500 (1941).

[10] *Younger* abstention is appropriate when 1) there is an ongoing state administrative proceeding that is judicial in nature; 2) there are important state interests involved; and 3) there are opportunities to raise constitutional issues in state court. *Younger v. Harris*, 401 U.S. 37, 44 (1971); *Allegheny Corp. v. McCartney*, 896 F.2d 1138, 1143 (8th Cir. 1990).

by the Eighth Circuit Court three years ago.  Noting that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," Vonage states that the United States Supreme Court has recognized "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 817 (1976).  Vonage also acknowledges that abstention is about comity, but argues that "comity works both ways."  *Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination,* 70 F.3d 1361, 1369 (1st Cir. 1995) (refusing to abstain where "the alleged intrusive action is not by the federal government, but by the [state commission's] purported regulation of conduct within the [National Labor Relations Board's] jurisdiction").

The Court is persuaded that nothing is gained by abstaining under the facts presented in this case.

## *Intervention*

The Applicant Interveners seek their alleged right to intervene, or in the alternative, permission to intervene.

Constitutional standing requires a showing of "(1) an injury in fact, which is an invasion of a legally protected interest that is concrete, particularized, and either actual or imminent; (2) causation; and  (3) redressability."  *Curry v. Regents of the Univ. of Minn.*, 167 F.3d 420, 422 (8th Cir. 1999).  Further, to claim intervention by right under Rule 24(a)(2), a party must show the following  (1) it claims an interest relating to the subject of the action; (2) the disposition of the action may impair or impede its ability to protect its

interest; and (3) its interest is not adequately represented by existing parties. *South Dakota v. Ubbelohde,* 330 F.3d 1014, 1023 (8th Cir. 2003).

Even if the movants cannot show mandatory intervention by right, the Court may allow them to intervene under Rule 24(b)(1)(B), if they have a claim or defense that shares with the main action a common question of law or fact. However, under Rule 24(b)(3): "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

The Court finds that the Applicant Interveners have failed to show an injury in fact cause by the Plaintiffs and that the Defendants cannot adequately represent their interest. Further, I conclude that permissive intervention is not appropriate because no judicial economy is gained by allowing the movants to intervene for the purpose of presenting defenses or arguments that can be or already have been presented by the Defendants. Permissive intervention, I believe, would only serve to delay and unfairly prejudice the rights of the original parties.

The Court agrees that the Defendants' counsel will fully and adequately represent the interests of the movants. With regard to that consideration, the Eighth Circuit Court has stated:

> When a government entity is a party and the case concerns a matter of sovereign interest, the government is presumed adequately to represent the interests of the public . . . This presumption may be rebutted by a strong showing of inadequate representation, as, for example, by showing that the interest of the would-be intervener cannot be subsumed within the public interest represented by the government entity.

15

*Curry v. Regents of the Univ. of Minnesota*, 167 F.3d 420, 423 (8th Cir. 1999) (citing *Mausolf v. Babbitt,* 85 F.3d 1295, 1303 (8th Cir. 1996), and *Chiglo v. City of Preston,* 104 F.3d at 187). No such showing has been made in this case.

Based on the February 29, 2008, voluntary dismissal of the Nebraska Public Service Commission and the Court's findings in this matter, the Court determines that the Defendants' Motion to Dismiss, or in the Alternative, to Stay Action (Filing No. 86) is moot.

For all these reasons,

IT IS ORDERED:

1. The Plaintiff's Motion for Preliminary Injunction and Declaratory Relief (Filing No. 3) is granted as follows:

   A. The Defendants are enjoined from asserting state jurisdiction over the Plaintiffs to force them to contribute to the Nebraska Universal Service Fund; and

   B. The Defendants' assertion of state jurisdiction over Plaintiffs to force them to contribute to the Nebraska Universal Service Fund is unlawful as preempted by the Federal Communication Commission;

2. The Applicant Interveners' Motion to Intervene (Filing No. 31) is denied; and

3. The Defendants' Motion to Dismiss, or in the Alternative, to Stay Action (Filing No. 86) is denied as moot.

DATED this 3rd day of March, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge